## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Evelyn N. McBride,**

               **Plaintiff,**

**v.**                                             **Case No. 06-2535-JWL**

**Medicalodges, Inc.,**

               **Defendant.**

_____

**Dorothy Ann Joyner,**

               **Plaintiff,**

**v.**                                             **Case No. 06-2536-JWL**

**Medicalodges, Inc.,**

               **Defendant.**

_____

**Tonette R. Ealy,**

               **Plaintiff,**

**v.**                                             **Case No. 06-2538-JWL**

**Medicalodges, Inc.,**

               **Defendant.**

## MEMORANDUM & ORDER

Plaintiffs, all current or former employees of defendant, filed separate lawsuits alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and the Age Discrimination in Employment Act, 29 U.S.C.§ 621 et seq.  The cases have

been consolidated for discovery and all pretrial proceedings and the  matter is presently before the court on defendant's motion for summary judgment with respect to the claims of Dorothy Joyner (doc. 228); defendant's motion for partial summary judgment with respect to the claims of Tonette Ealy (doc. 230); and defendant's motion for partial summary judgment with respect to the claims of Evelyn McBride (doc. 235).[1]  As will be explained, all plaintiffs are entitled to have their racial harassment claims tried to a jury and Ms. Ealy and Ms. Joyner are entitled to have their sexual harassment claims tried to a jury.  All other claims are either dismissed for lack of subject matter jurisdiction or resolved on summary judgment in favor of defendant.

## I.    Facts

The following facts are uncontroverted or related in the light most favorable to plaintiffs, the nonmoving parties.  Defendant Medicalodges, Inc. provides long- and short-term care to elderly patients, and it operates a facility in Kansas City, Kansas.  Plaintiffs all began working at defendant's Kansas City, Kansas facility in 2003.  Tonette Ealy began her employment with defendant in January 2003 as a housekeeper and, today, is employed by defendant as a nurse.  Evelyn McBride began her employment with defendant in August 2003 as the activities director;

---

[1]Defendant's motion to consolidate the three cases for purposes of trial pursuant to Federal Rule of Civil Procedure 42 is also pending before the court.  Plaintiffs have filed a response to the motion indicating that they support consolidation for trial purposes so long as plaintiffs, for work-related commitments, are excused if necessary from attending the entire trial and so long as any absence is explained to the jury.  Because the court will not require plaintiffs' attendance at the entire trial and will explain any absence to the jury, the motion to consolidate is granted as unopposed.

her employment was terminated in January 2005. Dorothy Joyner began her employment with defendant in June 2003 as a medical records clerk; her employment was terminated in December 2004. All plaintiffs are African-American females. During all times relevant to these lawsuits, Shawn Garbin was the facility's Director of Nursing and Cindy Frakes served as defendant's Regional Manager. Julie Melvin was the Administrator of the facility until August 2005, when Don Hanzel replaced her as the Administrator.

According to defendant's written policy against patient abuse, neglect and exploitation, defendant is required to suspend any employee suspected of such misconduct pending an investigation. On two occasions after Mr. Hanzel became the facility Administrator, Mr. Hanzel suspended Ms. Ealy with pay pursuant to this policy. On the first occasion, a patient claimed that Ms. Ealy had stolen money from him. An investigation was promptly conducted and resulted in Ms. Ealy returning to work the very next day. On the second occasion, Mr. Hanzel received a report from a housekeeper that she had seen Ms. Ealy leave a patient's room with a bag containing the patient's property. Mr. Hanzel again suspended Ms. Ealy pending an investigation and Ms. Ealy returned to work the following day. These two suspensions have had no impact on Ms. Ealy's employment status with defendant and she remains employed with defendant.

According to defendant, Ms. McBride, as the facility's Activities Director, was expected to develop and provide a wide variety of activities for facility residents and was expected to encourage all residents to participate in those activities regardless of whether residents utilized the sign-up sheet for activities. According to Ms. Melvin, during the latter part of 2004, she

3

frequently advised Ms. McBride that she needed to provide a wide variety of activities and to include more residents in those activities.  Ms. Melvin avers that Ms. McBride told her that she encouraged other residents to participate in activities, but most did not wish to do so.  Ms. Melvin further avers that in December 2004 she asked approximately 10 residents why they were not participating in activities and, without exception, those residents told her that they were very interested in participating but were not included in them.

Ms. McBride was also responsible, on occasion, for conducting monthly Resident Council meetings during which residents, among other things, conveyed to management any concerns or questions about the facility.  When a resident raised a concern or problem during a Resident Council meeting, defendant's practice was to have the staff member conducting the meeting either call the Department Head to whom the concern or problem pertained into the meeting to address the concern immediately or to otherwise advise the Department Head of the concern. Ms. McBride conducted a Resident Council meeting on December 28, 2004.  Ms. Melvin had apparently been advised that patient concerns were not being forwarded to Department Heads and, after the December 28, 2004 meeting, Ms. Melvin interviewed the Department Heads at the facility.  According to Ms. Melvin, those interviews revealed that no department heads were called into the Resident Counsel meeting and that ho department heads were apprised of concerns regarding their respective Department despite the fact that the meeting minutes indicated that several patients expressed specific concerns.

In January 2005, Ms. Melvin terminated Ms. McBride's employment.  The "Termination

4

for Cause" form filled out by Ms. Melvin stated that Ms. Melvin was terminating Ms. McBride's employment primarily based on Ms. McBride's failure to inform department heads of patient concerns expressed to her and because she failed to provide a variety of activities and to include all patients in those activities.

With respect to Ms. Joyner, defendant contends that it terminated her employment because Ms. Joyner ordered overpriced latex gloves from an unapproved vendor. By way of background, defendant had only two approved vendors from which it ordered latex gloves–McKesson and Medline. Ms. Joyner testified that she knew that defendant only ordered gloves from these two vendors. At some point in 2004, it became necessary for Ms. Joyner to order latex gloves and it is uncontroverted that Mr. Garbin advised Ms. Joyner that she was required to order gloves from either McKesson or Medline.

Thereafter, a company called Allstate Medical contacted Ms. Melvin about defendant's failure to pay an outstanding bill for an order of latex gloves. Because Ms. Melvin did not believe anyone from the facility had ordered gloves from Allstate Medical, Ms. Melvin filed a complaint with the Better Business Bureau and the state Attorney General's office. According to defendant's evidence, Allstate Medical then contacted Ms. Melvin and played for Ms. Melvin a tape-recorded telephone conversation of an individual placing an order for latex gloves on behalf of defendant. Ms. Melvin believed that the individual ordering the gloves was Ms. Joyner. According to defendant, Ms. Melvin terminated Ms. Joyner's employment because she ordered latex gloves from an unapproved vendor, knowing that the vendor was not approved.

In addition to asserting claims arising out of Ms. Ealy's suspensions and the termination

of Ms. Joyner and Ms. McBride's employment, plaintiffs set forth race-, sex- and age-based harassment claims against defendant based largely on the alleged conduct of Mr. Garbin. Additional facts concerning these claims will be related, as necessary, in connection with the court's analysis of defendant's motion.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an

essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.    Plaintiffs' Disparate Treatment Claims

The court begins with plaintiffs' disparate treatment claims. In the pretrial order, plaintiffs contend that defendant violated Title VII, section 1981 and/or the ADEA when it terminated the employment of Ms. Joyner and Ms. McBride and when it suspended Ms. Ealy on two occasions.[2]

---

[2]In its motion for summary judgment with respect to each plaintiff, defendant asserts that Title VII preempts section 1981 such that if any plaintiff has a Title VII claim that survives summary judgment, the corresponding section 1981 claim must be dismissed. Defendant also contends that each plaintiff's section 1981 claims must be dismissed in any event because no plaintiff has or had an employment contract with defendant. The court assumes that defendant has abandoned these arguments as defendant, in its reply, fails to

A.      *The Termination of Ms. Joyner's Employment*

Ms. Joyner contends that defendant terminated her employment on the basis of her race.[3]

Defendant, for purposes of its motion, concedes that Ms. Joyner can establish a prima facie case

of race discrimination concerning the termination of her employment and moves for summary

judgment solely on the grounds that Ms. Joyner cannot demonstrate that defendant's legitimate,

non-discriminatory reason for terminating Ms. Joyner's employment is pretextual.  *See Antonio*

*v. Sygma Network, Inc*., 458 F.3d 1177, 1181 (10th Cir. 2006) (if defendant meets burden of

articulating legitimate, non-discriminatory or non-retaliatory reason for adverse employment

action, summary judgment against plaintiff is warranted unless he or she shows that there is a

---

address plaintiffs' responses to the arguments.  In any event, both arguments are rejected.
Tenth Circuit law is clear that a plaintiff may pursue both a Title VII claim and a section
1981 claim based on the same facts, *see Heno v. Sprint/United Management Co.*, 208 F.3d
847 (10th Cir. 2000) (Title VII plaintiff need not prove an independent basis for section 1981
claim and trial court erred in granting judgment as a matter of law on section 1981 claim as
duplicative of Title VII claim) and that an at-will employment relationship is sufficient to
support a section 1981 claim.  *See Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999)
("[T]he employment-at-will relationship encompasses sufficient contractual rights to support
section 1981 claims for wrongful termination.").

[3]In the pretrial order, Ms. Joyner also alleges that her termination was based on her
gender.  Defendant highlights that Ms. Joyner did not raise this allegation in her charge of
discrimination and contends that Ms. Joyner has failed to exhaust her administrative remedies
with respect to this claim.  The court agrees and rejects Ms. Joyner's argument that her
allegations of sexual harassment are sufficient to encompass a claim that she was discharged
because of her gender.  *Jones v. UPS, Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007) (each
discrete incident of alleged discrimination constitutes its own unlawful employment practice
for which administrative remedies must be exhausted).  The court, then, dismisses Ms.
Joyner's gender discrimination claim for lack of subject matter jurisdiction.

genuine issue of fact as to whether defendant's reason is pretextual).

According to defendant, Ms. Melvin terminated Ms. Joyner's employment because Ms. Joyner ordered overpriced latex gloves from a vendor whom Ms. Joyner knew was not on defendant's approved vendor list.  Defendant has satisfied its "exceedingly light" burden of production, *see Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002), and the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretextual. *See Antonio*, 458 F.3d at 1181.  To show that an employer's proffered non-discriminatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id*. at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).  As explained below, Ms. Joyner has not come forward with sufficient evidence demonstrating pretext.  Summary judgment, then, is granted in favor of defendant on Ms. Joyner's termination claims.

In an effort to show pretext, Ms. Joyner contends that she did not order the latex gloves and that the alleged order was in all likelihood a "scam" or fraudulent order that is common in the long-term care industry.  But even if Ms. Joyner did not order the gloves or the order was fraudulent, the pertinent inquiry for purposes of demonstrating pretext is whether Ms. Melvin honestly believed that Ms. Joyner had ordered the gloves.  Ms. Joyner has come forward with no evidence calling into doubt Ms. Melvin's asserted belief that Ms. Joyner ordered the gloves

9

and there is no evidence demonstrating that Ms. Melvin did not actually hear a tape-recorded telephone conversation during which she heard Ms. Joyner (or, someone whom Ms. Melvin believed was Ms. Joyner) placing an order for the gloves.  As explained by the Tenth Circuit:

> [T]he relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. Thus, the relevant "falsity" inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination. Our reason for this rule is plain: our role is not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.

*Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citations and quotations omitted). In the absence of evidence that Ms. Melvin did not honestly believe that Ms. Joyner had ordered the gloves, summary judgment is warranted.

Ms. Joyner also attempts to demonstrate pretext by highlighting that another African-American female, Delores Free, was terminated on the same day that Ms. Joyner's employment was terminated.  Ms. Free's discharge, however, is insufficient to raise a jury question because Ms. Free's affidavit establishes that her employment was terminated by Mr. Garbin and there is no evidence that Ms. Melvin played a part in the decision to discharge Ms. Free.  Conversely, the evidence with respect to Ms. Joyner's termination reflects that Ms. Melvin was the decisionmaker (and, according to Ms. Joyner, possibly Ms. Frakes) with respect to Ms. Joyner's termination and there is no evidence that Mr. Garbin played a part in the decision to discharge Ms. Joyner.  In such circumstances, no reasonable jury could draw an inference of discrimination

10

concerning Ms. Joyner's discharge from the mere fact that Ms. Free was also discharged. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("A similarly-situated employee must have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff."); *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (anecdotal evidence of discrimination should only be admitted if the other incidences of alleged discrimination can somehow be tied to the employment action disputed in the case at hand).

For the foregoing reasons, the court grants summary judgment in favor of defendant on Ms. Joyner's claim that defendant terminated her employment based on her race.


B.     *The Termination of Ms. McBride's Employment*

The court turns, then, to Ms. McBride's claims concerning the termination of her employment.  According to Ms. McBride, defendant terminated her employment on the basis of her race and/or age.  As with Ms. Joyner's claims, defendant concedes that Ms. McBride can establish a prima facie case of discrimination concerning the termination of her employment and moves for summary judgment on the grounds that Ms. McBride cannot demonstrate that defendant's legitimate, non-discriminatory reasons for terminating Ms. McBride's employment is pretextual.  *See Antonio*, 458 F.3d at 1181.  According to defendant, Ms. Melvin terminated Ms. McBride's employment because Ms. McBride failed to advise department heads about concerns expressed by patients at resident council meetings, routinely excluded a large number of patients from off-site activities and failed to offer a wide range of activities to patients.

Defendant has satisfied its burden of production and, thus, the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretextual. *See id.*

Ms. McBride asserts that defendant's reasons are pretextual because she overheard two employees–prior to December 28, 2004–say that defendant was going to terminate Ms. McBride's employment. According to Ms. McBride, then, Ms. Melvin was planning to terminate Ms. McBride's employment well before the December 28, 2004 resident council meeting. The problem with Ms. McBride's evidence on this point, however, is that it constitutes inadmissible hearsay. Ms. McBride does not allege that the individuals who made the statements were speaking within the scope of their employment with defendant such that their statements could be deemed admissions under Federal Rule of Evidence 801(d)(2) and she does not contend that the statements otherwise fall within any exception to the rule against hearsay.

Ms. McBride also points to the termination of Ms. Joyner's and Ms. Free's employment in December 2004 as evidence sufficient to permit an inference of discrimination. As explained above, Ms. Free's employment was terminated by Mr. Garbin; Ms. McBride's employment was terminated by Ms. Melvin. In such circumstances, no reasonable jury could draw an inference of discrimination concerning Ms. McBride's discharge from the fact that Ms. Free was also discharged. *See Heno*, 208 F.3d at 856. While Ms. Joyner was terminated by Ms. Melvin, that termination decision occurred nearly a month prior to the decision to terminate Ms. McBride's employment. Moreover, the record is devoid of any evidence concerning the total number of African-American employees working at the facility such that the court could infer that the termination of two or three African-American employees within a one month time frame is, in

and of itself, statistically significant.

Finally, Ms. McBride makes much of the fact that three "Termination for Cause" forms apparently exist concerning Ms. McBride's termination (only two forms are in the record) and that only one of those forms bears the signature of Ms. Melvin.  Ms. McBride, however, does not explain the significance of the alleged fact that several forms exist and the court sees none. This is particularly true because, at least with respect to the two forms in the record, the typewritten portion of the form concerning the reasons for the termination decision are identical in every respect.

In sum, Ms. McBride has not come forward with evidence from which a reasonable jury could conclude that the reasons for her termination are pretextual.  Summary judgment is granted in favor of defendant on Ms. McBride's claims that defendant terminated her employment on the basis of her race and/or age.[4]

C.   *Ms. Ealy's Suspensions*

Ms. Ealy contends that defendant suspended her on two occasions on the basis of Ms. Ealy's race and/or sex.  Defendant moves for summary judgment on these claims to the extent they are asserted under Title VII on the grounds that Ms. Ealy's suspensions were never the subject of a charge of discrimination.  The court construes this aspect of defendant's motion as

---

[4]Ms. McBride has filed a motion for leave to file a surreply concerning certain arguments made by defendant in its reply brief concerning the circumstances surrounding Ms. McBride's termination.  The motion is granted and the court has fully considered the arguments made by Ms. McBride in her surreply.

a motion to dismiss for lack of subject matter jurisdiction, *see Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005) (when a district court determines that it lacks subject matter jurisdiction over a case, the proper disposition of the case is the entry of an order dismissing the case rather than the entry of summary judgment) and grants the motion. Ms. Ealy's charge of discrimination was filed in June 2005.  Her suspensions occurred after Mr. Hanzel became the facility administrator in August 2005.  Obviously, then, her suspensions could not have been included in her June 2005 charge and she neither amended that charge to include the suspensions nor filed a subsequent charge.  Without question, she has failed to exhaust her administrative remedies with respect to her claim that defendant suspended her based on her race and/or sex in violation of Title VII.  *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (any claim involving a discrete employment action must have been the subject of a charge of discrimination at the administrative level).

Of course, Ms. Ealy was not required to exhaust any administrative remedies before bringing her claim defendant suspended her on the basis of her race in violation of section 1981. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 n.9 (10th Cir. 1997).  Nonetheless, summary judgment is appropriate on this claim because, as asserted by defendant, the one-day paid suspensions received by Ms. Ealy do not constitute "adverse employment actions" within the meaning of the Tenth Circuit's discrimination jurisprudence.  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (to establish a prima facie case of disparate treatment, plaintiff must establish, among other things, that he suffered an adverse employment action). Only "acts that constitute a significant change in employment status, such as hiring, firing,

14

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" will rise to the level of an adverse employment action. *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006); *see also Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (*Burlington Northern* "had no . . . effect on our discrimination jurisprudence"). There is no evidence in the record suggesting that the one-day paid suspensions had any effect on Ms. Ealy's employment status.

It is undisputed that no further action was taken with respect to either suspension, that the suspensions had no bearing on Ms. Ealy's wages, and that Ms. Ealy continues her employment with defendant to this day. Moreover, the uncontroverted evidence reflects that defendant, in suspending Ms. Ealy for one day with pay pending an investigation, simply applied its written policy concerning patient abuse, neglect and exploitation and did not exceed that policy in disciplining Ms. Ealy. In the absence of any evidence that the paid suspensions received by Ms. Ealy adversely affected the terms and conditions of her employment in any respect, summary judgment is granted on this claim. *See Nichols v. Southern Illinois University–Edwardsville*, 510 F.3d 772, 786-87 (7th Cir. 2007) (placement of employee on paid administrative leave pending the conclusion of an investigation does not constitute an adverse action) (collecting cases holding same); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (two-day paid administrative leave pending investigation did not constitute adverse action); *Joseph v. Leavitt*, 465 F.3d 85, 92-93 & n.1 (2d Cir. 2006) (five-month paid suspension did not constitute adverse action where the employer simply applied reasonable disciplinary procedures and acted with reasonable diligence in conducting its investigation into accusations).

15

### IV.   Plaintiffs' Retaliation Claims

All plaintiffs assert claims of retaliation under Title VII and section 1981, asserting that they suffered adverse employment actions as a result of their complaints of racial and sexual harassment and discrimination.[5]  The court begins with Ms. Ealy's retaliation claims–claims which mirror her disparate treatment claims in that they are based entirely on Ms. Ealy's two one-day paid suspensions pending defendant's investigation of Ms. Ealy's conduct.  For the same reasons detailed above in connection with Ms. Ealy's Title VII disparate treatment claims, Ms. Ealy's Title VII retaliation claim is dismissed because Ms. Ealy's suspensions were never the subject of a charge of discrimination.  *See supra* at p. 14.  With respect to Ms. Ealy's section 1981 retaliation claim, summary judgment is appropriate in favor of defendant because Ms. Ealy's two one-day paid suspensions pending defendant's prompt investigation into the events leading to the suspensions would not have dissuaded a reasonable employee from making or supporting a charge of discrimination.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Nichols v. Southern Illinois University–Edwardsville*, 510 F.3d 772, 786-87 (7th  Cir. 2007) (paid administrative leave pending investigation does not constitute materially

---

[5]Ms. McBride, in the pretrial order, also asserts a claim of retaliation under the ADEA.  In her response to defendant's motion for summary judgment, however, she concedes that she never complained of age discrimination or otherwise opposed any practice made unlawful by the ADEA.  Summary judgment in favor of defendant is thus appropriate on this claim.  *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1201-02 (10th Cir.  2008) (prima facie case of ADEA retaliation requires a showing that the plaintiff engaged in protected opposition to discrimination made unlawful by the ADEA).

adverse action under *Burlington Northern*); *Solomon v. Philadelphia Newspapers, Inc.*, 2008 WL 2221856, at *17 (E. D. Pa. May 21, 2008) (nine-day suspension with pay pending prompt investigation into allegations of wrongdoing did not constitute materially adverse action within meaning of *Burlington Northern*) (collecting cases).[6]

The court turns, then, to the retaliation claims asserted by Ms. McBride and Ms. Joyner–claims which are based solely on the termination of Ms. McBride's and Ms. Joyner's employment.  Defendant moves for summary judgment on these claims on the grounds that plaintiffs have failed to present sufficient evidence from which a reasonable jury could conclude that retaliation was a motivating factor in the termination decisions or from which a jury could reasonably conclude that defendant's proffered reasons for the termination decisions are unworthy of belief.  *See Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1225 (10th Cir. 2008).  In response to defendant's motions, Ms. McBride and Ms. Joyner present the same evidence of pretext in connection with their retaliation claims as they set forth with respect to their disparate treatment claims.  As explained above in connection with those claims, neither plaintiff has come forward with evidence of pretext sufficient to survive summary judgment and,

---

[6]Defendant contends that the more lenient standard adopted by the Supreme Court in analyzing the anti-retaliation provisions of Title VII would not apply in the context of section 1981 retaliation claims.  While the Tenth Circuit has not expressly addressed this argument, it has long recognized that the elements of a section 1981 retaliation claim are identical to the elements of a Title VII retaliation claim.  *See Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1110 (10th Cir. 1998).  Thus, the court believes that the Tenth Circuit would apply *Burlington Northern* in the context of a section 1981 retaliation claim.  *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (applying, with discussion of the issue, *Burlington Northern* standard to section 1981 retaliation claim); *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 865 n.3 (N.D. Tex. 2008) (same).

for the same reasons explained by the court in its analysis of the disparate treatment claims, summary judgment in favor of defendant is appropriate with respect to Ms. McBride's and Ms. Joyner's retaliation claims.

## V.      Plaintiffs' Harassment Claims

The court turns, then, to plaintiffs' harassment claims.  All plaintiffs allege that Mr. Garbin's  alleged conduct toward plaintiffs and other African-American employees created a racially hostile working environment in violation of Title VII and section 1981.  In addition, Ms. Ealy and Ms. Joyner assert claims of sexual harassment based on the conduct of Mr. Garbin. Finally, Ms. McBride alleges that defendant subjected her to a hostile work environment based on her age in violation of the ADEA.

Defendant moves for summary judgment on the racial harassment claims of Ms. Ealy and Ms. Joyner and the sexual harassment claim of Ms. Joyner on the grounds that plaintiffs have not come forward with evidence of racial or sexual harassment sufficiently severe or pervasive to alter the conditions of plaintiffs' employment and create an abusive working environment. Defendant does not move for summary judgment on Ms. McBride's racial harassment claim or on Ms. Ealy's sexual harassment claim.  With respect to Ms. McBride's age-based hostile work environment claim, defendant moves for summary judgment on the grounds that the court lacks subject matter jurisdiction over the claim.

As will be explained, the racial harassment claims of Ms. Ealy and Ms. Joyner and the sexual harassment claim of Ms. Joyner must be resolved by a jury.  The court dismisses Ms.

McBride's age-based harassment claim for lack of subject matter jurisdiction.

B.      *Ms. Ealy's and Ms. Joyner's Racial Harassment Claims*

With respect to Ms. Ealy's and Ms. Joyner's racial harassment claims, defendant asserts that neither plaintiff can establish that she suffered harassment sufficiently severe or pervasive to alter the conditions of plaintiffs' employment and create an abusive working environment. To survive defendant's motion for summary judgment on this claim, each plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)). She must also show that she was "targeted for harassment" because of her race. *Id.*

In support of its motion for summary judgment, defendant contends that Ms. Ealy's racial harassment claim is based solely on two racial remarks made by Mr. Garbin–one occasion when Mr. Garbin allegedly told Ms. Ealy to "move [her] black ass" and one occasion when Mr. Garbin allegedly threatened to "fire [her] black ass." Similarly, defendant contends that Ms. Joyner's racial harassment claim is based solely on three racial remarks made by Mr. Garbin–two occasions when Mr. Garbin allegedly used the phrase "black ass" and another occasion when Ms. Joyner overheard Mr. Garbin allegedly use the phrase "damn nigger." Defendant, then, asserts that the two comments directed toward Ms. Ealy and the three comments directed toward

19

or overheard by Ms. Joyner, as a matter of law, are insufficient to constitute a racially hostile work environment. *See id.* ("A plaintiff does not make a showing of a pervasively hostile work environment by 'demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005))).

Defendant's characterization of the extent of each plaintiff's evidence, however, is simply not supported by the record before the court. Defendant's construction of Ms. Ealy's evidence of racial harassment is based on its reading of Ms. Ealy's deposition, wherein she provides the context to the two comments allegedly made by Mr. Garbin. However, a careful reading of Ms. Ealy's deposition reveals that Ms. Ealy did not limit her claim to those two comments. Indeed, after Ms. Ealy provided the two examples highlighted in defendant's motion, the following colloquy occurred between defendant's counsel and Ms. Ealy:

> Counsel: You described for me two incidents. Any other incidents with Shawn Garbin?
>
> Ms. Ealy: It was quite a bit. I am going to be honest. I mean–
>
> Counsel: Well, I am hoping you are honest all day.
>
> Ms. Ealy: I am.

At that point, defendant's counsel shifted his questioning to other, unrelated issues. The record indicates, then, that defendant's counsel interrupted Ms. Ealy's response and thereafter declined to permit Ms. Ealy an opportunity to describe the totality of Mr. Garbin's alleged conduct or to elaborate on her testimony indicating that Mr. Garbin allegedly used racial remarks "quite a bit."

Thus, defendant has not shown that Ms. Ealy's claim is limited to two remarks and, in fact, the record as it stands is sufficient to permit a jury to conclude that Mr. Garbin frequently made racial remarks.

Similarly, the record reflects that Ms. Joyner's racial harassment claim is not limited to the three comments highlighted by defendant in its motion. Rather, Ms. Joyner avers that Mr. Garbin referred to Ms. Joyner as "chocolate," "my chocolate" or "my dark chocolate" "nearly every day" from the fall of 2003 until the day her employment was terminated. Defendant does not address this evidence in any respect in its reply brief. She further avers that Mr. Garbin "frequently" became upset with African-American employees, including Ms. Joyner, and would "often" threaten to "fire [our] black asses." This evidence is sufficient to permit a reasonable jury to conclude that Ms. Joyner was subjected to severe or pervasive harassment because of her race.

For the foregoing reasons, defendant has not shown that it is entitled to summary judgment on the racial harassment claims of Ms. Ealy and Ms. Joyner.[7]

C.    *Ms. Joyner's Claim of Sexual Harassment*

─────────────────

[7]In their responses to defendant's motions for summary judgment, Ms. Ealy and Ms. Joyner set forth additional evidence that they believe demonstrates severe and pervasive racial harassment, including plaintiffs' testimony concerning Mr. Garbin's treatment of other African-American employees and the testimony of other witnesses concerning alleged racial harassment experienced or observed by those witnesses. Because the court concludes that plaintiffs' racial harassment claims survive summary judgment without regard to this evidence, the court has not considered this additional evidence in any respect and expresses no opinion as to the admissibility of such evidence at trial.

Defendant's motion for summary judgment with respect to Ms. Joyner's sexual harassment claim is akin to its motion with respect to the racial harassment claims–it contends that Ms. Joyner cannot establish that she suffered harassment sufficiently severe or pervasive and characterizes Ms. Joyner's claim as limited to only a handful of discrete incidents. According to defendant, Ms. Joyner bases her claim on a 2003 incident in which Mr. Garbin allegedly touched Ms. Joyner's thigh; an incident in 2004 when Mr. Garbin allegedly massaged her shoulders; an incident in 2004 in which Mr. Garbin "bumped" her while she was working at a nurses' station; and an incident in 2003 in which Mr. Garbin did not realize that she was using the restroom and inadvertently opened the door. Defendant contends that these four isolated incidents are insufficient as a matter of law to rise to the level of a Title VII violation. *See EEOC v. PVNF, LLC*, 487 F.3d 790, 797-98 (10th Cir. 2007) ("To constitute actionable sexual harassment, a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and that the victim was targeted 'because of her gender.'").

In response to defendant's motion, Ms. Joyner has submitted an affidavit in which she sets forth numerous allegations concerning Mr. Garbin's alleged harassment of her. According to Ms. Joyner, Mr. Garbin frequently stood behind her with his pelvic area pressed against her buttocks and would remain standing there long enough for Ms. Joyner "to feel that he had an erection." She avers that Mr. Garbin, throughout Ms. Joyner's employment, commented on her breasts and called her into his office for the sole purpose of observing what Ms. Joyner was

22

wearing.  While defendant complains that Ms. Joyner did not disclose these allegations in her deposition, it is not clear to the court from the record that defendant's counsel provided Ms. Joyner the opportunity to testify about each allegation that she contended supported her sexual harassment claim or asked Ms. Joyner whether she had, in fact, described each incident that she believed supported her claim.  The court, then, will not disregard the allegations contained in Ms. Joyner's affidavit and those allegations are more than adequate to survive defendant's motion for summary judgment.[8]


D.    *Ms. McBride's Claim of Hostile Work Environment Based on Age*

In the pretrial order, Ms. McBride alleges that defendant subjected her to a hostile work environment based on her age in violation of the ADEA.  Defendant moves for summary judgment on this claim on the grounds that Ms. McBride failed to exhaust her administrative remedies with respect to the claim.  The court construes this portion of defendant's motion as a motion to dismiss for lack of subject matter jurisdiction, *see Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005) and, as will be explained, grants that motion.

Without question, Ms. McBride's charge of discrimination is devoid of any allegations of age-based harassment.    Indeed, Ms. McBride does not dispute that her charge of

_____

[8]Defendant also contends that the statements in Ms. Joyner's affidavit constitute inadmissible hearsay because she has presented those allegations by explaining how she responded to an EEOC investigator's questions about her charge of discrimination.  The issue is moot, as Ms. Joyner has filed a motion to file a clarifying affidavit (which the court grants) reflecting that she would testify at trial consistent with what she told the EEOC investigator.

discrimination does not allege age-based harassment in any respect. She insists, however, that she has exhausted her administrative remedies with respect to this claim by virtue of her verified intake questionnaire which, according to Ms. McBride, sufficiently set forth a claim of age-based harassment. The court disagrees. According to Ms. McBride, her age-based harassment claim falls within the scope of the allegations contained in her intake questionnaire because, in the section of the questionnaire entitled "Harassment, " she responded "yes" to the following question: "Do you believe that because of your race, color, sex, national origin, religion, pregnancy, age or disability you were subjected to conduct which was so intimidating, hostile or otherwise offensive that it interfered with your job performance?"

Significantly, however, Ms. McBride declined to answer the next question on the form: "If yes, please provide specific examples of the treatment." Her failure to answer this question greatly undermines the fact that she responded in the affirmative to the sweeping, broad-based question on the form. Indeed, in the "harassment" section of the form, the only specific facts alleged by Ms. McBride are that she suffered harassment "several times a month during in services" and that the most recent event occurred on January 20, 2005, the date of her discharge.[9] The "harassment" section of the intake questionnaire, then, contains no facts or allegations concerning age-based harassment that might prompt an investigation of that claim. *See Jones v. UPS*, 502 F.3d 1176, 1186 (10th Cir. 2007) ("A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow

---

[9]While Ms. McBride checked the "age" box in the "background information" section of the questionnaire (in addition to numerous other boxes), she similarly provided no specific facts or allegations concerning age-based harassment.

the charge of discrimination submitted to the EEOC."). In the absence of any facts or a description of any acts that might constitute age-based harassment, Ms. McBride's age-based harassment claim cannot be said to fall within the scope of her intake questionnaire. *See id.* (intake questionnaire construed as charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim").

Indeed, the court's conclusion that Ms. McBride's intake questionnaire is devoid of any facts or allegations that might prompt an investigation of age-based harassment is supported by the fact that the EEOC did not construe Ms. McBride's filings as setting forth a claim of age-based harassment. In its determination letter, the EEOC summarized Ms. McBride's claims as follows:

> Charging Party alleges discrimination based on race, color, age, and retaliation, in that she was sexually and racially harassed by the Director of Nursing, then terminated in retaliation for her complaints about the harassment and because of her age.

According to the EEOC, then, Ms. McBride's age-related claim was limited to the termination of her employment–a construction that is entirely consistent with Ms. McBride's formal charge of discrimination which contains only one sentence pertaining to Ms. McBride's age: "I also believe that I was discharged due to my age, 57, in violation of the Age Discrimination in Employment Act." For the foregoing reasons, the court dismisses Ms. McBride's age-based harassment claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for

summary judgment regarding the claims of Dorothy Joyner (doc. 228), which the court construes in part as a motion to dismiss for lack of subject matter jurisdiction, is **granted in part and denied in part**; defendant's motion for partial summary judgment regarding the claims of Tonette Ealy (doc. 230), which the court construes in part as a motion to dismiss for lack of subject matter jurisdiction, is **granted in part and denied in part**; and defendant's motion for partial summary judgment regarding the claims of Evelyn McBride (doc. 235), which the court construes in part as a motion to dismiss for lack of subject matter jurisdiction, is **granted.**

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's motion to consolidate cases for trial purposes (doc. 252) is **granted**; Ms. Joyner's motion to file a clarifying affidavit (doc. 303) is **granted**; Ms. McBride's motion for leave to file a surreply (doc. 304) is **granted**.

**IT IS SO ORDERED.**

Dated this 3rd day of July, 2008, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge